# Henry Vanuxem et al., Late Trading as Vanuxem, Wharton & Company, Plffs. in Err., *v.* Homer Bostwick.

A contract of hiring for a definite period is not terminated or rescinded by the insolvency of the master, or dissolution of partnership, before the end of the period of hiring.

A notice to the servant that his services will be no longer required will not rescind the contract, unless the servant assented to his discharge.

Testimony that the servant had notice of the insolvency and dissolution of the firm employing him, and made no objection to the notification of his discharge, and afterwards sent a probated statement of his claim by the month, which did not include the two months then last past, these two months being within the period of hiring, is evidence from which the jury might find that the servant assented to his discharge; and it is error for the court to refuse to so charge the jury.

(Argued January 13, 1887. Decided January 24, 1887.)

July Term, 1886, No. 156, before MERCUR, Ch. J., GORDON,

NOTE.—The contract of employment of a domestic servant is terminated by the death of the employer. Womrath's Estate, 6 Pa. Co. Ct. 262, 19 Phila. 123. But the employment is not ended by the insolvency of the employer (Philadelphia Packing & Provision Co.'s Estate, 4 Pa. Dist. R. 57, 15 Pa. Co. Ct. 650); or by the dissolution of a partnership which employed, on account of the death of one partner (Fereira v. Sayres, 5 Watts & S. 210, 40 Am. Dec. 496; Johnson v. Judge, 16 Pa. Super. Ct. 137).

PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.  Error to Common Pleas No. 4 of Philadelphia County to review a judgment on a verdict for plaintiff in an action of assumpsit on a contract of hiring.  Reversed.

The terms of the contract upon which suit was brought are stated in the opinion of the supreme court.  The *narr.* was in the common counts with a special count for breach of the contract.

There was evidence that in June, 1884, the goods of defendants were seized by the sheriff, and that they made an assignment for the benefit of creditors.

On June 5, 1884, the defendants wrote the plaintiff the following letter: "We regret very much to have to report that owing to unforeseen difficulty we have been obliged to suspend payment.  We notify you now, so that in case you have any opportunities to make a change you may avail yourself of them at once."

On June 25, 1884, they wrote to the plaintiff: "Yours of the 24th at hand.  At present we cannot say anything in regard to payment of salaries after June 1.  This is a matter which must remain for the present *in statu quo.*  Any balances due before June 1 we will take into consideration the propriety of paying. As we have before written you, your services will not be required after July 1.  You are, therefore, free to look for another position."

The plaintiff did not notify the defendants that he objected to his discharge, and on October 4, 1884, he sent to their assignee a letter, in which he said: "I enclose you my claim, and would be obliged to you if you kindly let me know your intentions regarding the matter."

The statement of claim, with affidavit, are contained in the opinion of the supreme court.

The court refused to affirm the following points presented by defendants:

"1. If the jury find that plaintiff was employed for the term of one year, by the firm of Vanuxem, Wharton, & Company, to act as their agent to sell such goods as they might manufacture and consign for sale to New York, this was upon the implied understanding that the employment was only to continue for one year, if the existence of the firm should so long continue.  If

you find that in the month of June, 1884, the firm went out of existence and was dissolved because of its insolvency, of its property being attached and seized by the sheriff, and of its being compelled to make an assignment of all its assets for the benefit of creditors; that in said month of June the firm notified plaintiff of these facts, and of its being unable to continue him in its employ after July 1, 1884; and that he was not continued by it in its employment after the first of July, 1884,— then he can only recover his salary up to that date."

"2. If the jury find the above facts and further find that a notice by the firm such as is above stated was given on the third day of June, 1884, and that after such notice the plaintiff without expressing any dissent or objection, sent to the firm's assignee letter of the 4th of October, 1884, with accompanying affidavit of October 3, 1884, you can find that there was such acquiescence by him in his discharge, and that bars his recovery for more than the sum claimed by him in said letter."

The assignments of error specified the refusal of the points.

*John Sparhawk, Jr.,* and *John G. Johnson,* for plaintiffs in error.—Where a servant is employed by a firm, a dissolution of the firm dissolves the contract, so that the servant is absolved therefrom; but, if the dissolution results from the act of the parties, they are liable to the servant for his loss therefrom; but if the dissolution results from the death of a member of the firm, the dissolution resulting by operation of law and not from the act of the parties, no action for damages will lie. . . . The test is whether the firm is dissolved. So long as it exists the contract is in force, but when it is dissolved the contract is dissolved with it; and the question as to whether damages can be recovered therefor will depend upon the quetion whether the dissolution resulted from the act of God, the operation of the law, or the act of the parties. Wood, Mast. & S. p. 308, § 163.

If the master is declared a bankrupt, the contract is treated as at an end by operation of law, unless provision is made in the bankrupt law for the payment of the servant's wages for the whole term. Id. p. 307, § 161.

In McKelvy's Appeal, 72 Pa. 409, it was held that an assignment for the benefit of creditors worked a dissolution of the firm, and it was said: "It is not easy to distinguish from bankruptcy the case of a voluntary assignment by an insolvent firm

which strips the partnership of all its means of continuing business, followed by an actual relinquishment of the business."

*Warren G. Griffith,* for defendant in error.—Plaintiffs in error's second citation from Wood, taken in connection with the context, not given by them, means that, in case of bankruptcy, the wages may be apportioned and the servant may prove, under the bankrupt law, for a *pro rata.*

In an action for breach of contract of hiring, bankruptcy is no defense. Thomas v. Williams, 1 Ad. & El. 685; Dobbin v. Foster, 1 Car. & K. 323; Smith, Mast. & S. 4th ed. pp. 18–36, 211; *Re* English & S. Marine Ins. Co. L. R. 5 Ch.. 737; *Re* London & S. Bank, L. R. 9, Eq. 149; Yelland's Case, L. R. 4 Eq. 350; Ex parte Clark, L. R. 7 Eq. 550; Dean's Claim, 26 L. T. N. S. 467; Shirreff's Case, L. R. 14 Eq. 417.

In Vail v. Jersey Little Falls Mfg. Co. 32 Barb. 564, it is held that the fact that there is nothing for an employee to do does not affect his right to his salary, if he regularly attends at his place of employment and holds himself ready to serve. Fereira v. Sayres, 5 Watts & S. 210, 40 Am. Dec. 496, rules this case on this point.

To affirm defendants' second point would have been, in effect, a binding instruction to the jury that plaintiff's letter to the assignee was an acquiescence in his discharge.

If the claim presented by the plaintiff to defendants' assignee is to have the effect imputed to it, it must be by way of estoppel. It cannot have this effect, because it was not a representation made to defendants, and they did not act upon it, nor were they prejudiced by it. Patterson v. Lytle, 11 Pa. 53.

OPINION BY MR. JUSTICE STERRETT:

There was no error in refusing to charge as requested in defendants' first point. It appears from the written contract between the parties that plaintiff was employed by the firm, defendants, "to sell goods for them" for one year from January 1, 1884, at a salary of $1,800, payable $150 per month. There is nothing in the contract itself, nor in the testimony *dehors* the instrument, to indicate an implied understanding that the employment for one year was contingent on the continued existence of the firm for that length of time.

The fact that defendants became insolvent and were obliged

to cease business about the middle of the year did not absolve them from their obligation to pay plaintiff's salary according to the terms of the agreement; nor did the notice that his services would not be required after July 1, have the effect of rescinding the contract, unless plaintiff assented thereto. As was said in Fereira v. Sayres, 5 Watts & S. 210, 40 Am. Dec. 496:

"It is enough that there was an express and positive agreement which cannot be annulled, except with the assent of both."

The first specification of error is not sustained.

The only other ground of defense was that plaintiff, after receiving notice of his discharge, assented thereto and thus terminated the contract relation. In support of that position defendants gave in evidence a probated statement rendered by plaintiff to their assignee, October 4, 1884, wherein his account against them is stated as follows:

To labor and services for June and July at $150

     per m. ...............................$300

   By cash paid on account of June wages........ 100

     Balance unpaid ........................$200

To this was appended his affidavit in which he declares "that the annexed statement of account of himself with the late firm of Vanuxem, Wharton, & Company, heretofore doing business in the city of New York, is just, true, and correct, and that there is now due deponent the sum of $200 thereon; that no part thereof has been paid or satisfied, and that there are no set-offs or counterclaims thereto, to the knowledge or belief of deponent."

In view of this evidence, and other testimony tending to prove insolvency and dissolution of the firm, and that plaintiff made no objection to the notification of his discharge, etc., the court was requested to instruct the jury, in substance, that if they found the facts as recited in defendants' second point, and that plaintiff transmitted to their assignee the letter of October 4, 1884, inclosing the probated statement of his claim against defendants, they might find that he had assented to his discharge, and if so, he is barred from recovering "more than the sum claimed by him in said letter." The refusal of the court to so charge is the subject of complaint in the second specification.

The testimony referred to tended to prove the conclusion of fact sought to be drawn therefrom, and was therefore proper for the consideration of the jury. They might well conclude that the contract relation had terminated prior to the month of September, because if it had not, plaintiff would have included, in his probated claim, salary for the months of August and September, both of which were then due if the contract was still in force.

There is nothing in the statement and probate to indicate that plaintiff had any other or further claim against the firm. On the contrary, the inference that he had none is neither strained nor unreasonable. If the contract was not annulled by mutual agreement and plaintiff had a claim for the further sum of $300, for salary for months of August and September, why was it not included in the probated account of October 3, 1884? It does not appear that plaintiff ever attempted to explain why he thus omitted more than half of his alleged claim then due and payable.

The testimony fairly presented a question of fact upon which it was the province of the jury to pass; and hence, there was error in refusing to affirm defendants' point recited in the second specification.

Judgment reversed and a *venire facias de novo* awarded.